UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

LUIS ZENON,

Plaintiff,

                  -against-

PATRICK D. DOWNEY, Correction Officer; ANTHONY
J. ANNUCCI, Acting Commissioner of the Department of
Corrections and Community Supervision; JOSEPH
BELLNIER, Deputy Commissioner, Correctional Facility
Operations; STEVEN RACETTE, Superintendent of
Clinton Correctional Facility; DONALD QUINN, First
Deputy Superintendent of Clinton Correctional Facility;
STEPHEN BROWN, Deputy Superintendent for Security
of Clinton Correctional Facility; CHRISTOPHER
MILLER, Superintendent of Great Meadow Correctional
Facility; MATTHEW THOMS, First Deputy
Superintendent of Great Meadow Correctional Facility;
RODNEY EASTMAN, Deputy Superintendent for Security
Great Meadow Correctional Facility; FRANCIS
SCARLOTTA, Seargeant Great Meadow Correctional
Facility; JOHN DOE Supervisor in Charge of the
Segregated Housing Unit at Great Meadow Correctional
Facility; JOHN DOE Decisionmaker to Place Clinton
Inmates in Great Meadow SHU; JOHN DOE Supervisors at
Clinton and Great Meadow Correctional Facilities ##1-25;
JOHN DOE State Troopers ##1-10; JOHN DOE Correction
Officers at Clinton and Great Meadow Correctional
Facilities ##1-50,

Defendants.

----------------------------------------------------------------------- X

**COMPLAINT AND
JURY DEMAND**

Docket No.   9:18-cv-458

ECF CASE

## **INTRODUCTION**

1.   Luis Zenon was a porter and inmate on the Honor Block in Clinton Correctional

Facility.  He was on the Honor Block because of his good behavior while in custody.

2.    At about 5:30 A.M. on June 6, 2015, the bell rang and a correction officer was doing the count.  Suddenly, a correction officer starts yelling for all inmates to go to the front of their cells and show identification.

3.    Later that morning, Mr. Zenon found out that Richard Matt and David Sweat had escaped from the facility. Thirty three days of hell ensued for Mr. Zenon, a hell that no person in a civilized society should have to endure, especially at the hands of those with official authority.

## STATE OF DENIAL

4.    The brutality, abuse and corruption endemic to Clinton Correctional Facility and many New York State prisons has long been known.  The New York State Correctional Association ("NYSCA") is mandated by statute to monitor correctional facilities in the State.  All state correctional facilities are required to allow NYSCA representatives to visit said facilities at their pleasure.

5.    In October, 2014 NYSCA reported that reports of physical abuse by correction officers against inmates was extremely high inside Clinton Correctional Facility.[1]

6.    On September 4, 2015, NYCSA published "10 things you need to know about brutality and abuse at Clinton Correctional Facility"[2] in connection with the escape of Richard Matt and David Sweat.  Their list is as follows:

   a.   **Officers are Suffocating People During Interrogations**

   b.   **There was Severe and Widespread Brutality in the Escape's Aftermath**

   c.   **People were Targeted Post-Escape for Reasons Unrelated to the Escape**

---

[1] The report can be found at http://www.correctionalassociation.org/wp-content/uploads/2015/03/Clinton-Correctional-Facility-Final-Draft-2.pdf

[2] The report can be found at http://www.correctionalassociation.org/news/10-things-you-need-to-know-about-brutality-and-abuse-at-clinton-c-f

    d.   **There has been Longstanding and Ongoing Brutality at Clinton**

    e.   **After being Assaulted, People are Sent to Solitary Confinement**

    f.   **There is a Lack of Proper Documentation and Accountability for Abuses**

    g.   **COs are Denying People the Most Basic Rights and Living Conditions**

    h.   **Racism and Dehumanization are at the Core of All of the Abuses**

    i.   **People at Clinton have been Held in Solitary Confinement for Decades**

    j.   **Not Just Clinton: Beating, Maiming, and Torture Occurs Across NY Prisons**

7.   Despite the evidence and pleas from the state's legislatively mandated correctional monitoring organization, and countless complaints from inmates and their families, press coverage of abuses, investigations that reveal abuse, notices of intent to sue and lawsuits, New York is in a state of denial.

8.   Indeed, while Richard Matt and David Sweat were missing, in his own state of denial about the corruptibility of correction officers, Governor Cuomo stated: "I would be shocked if a correction official if a guard was actually involved. And that's putting it mildly."

9.   Governor Cuomo got it wrong. Correction Officer Eugene Palmer was smuggling contraband into the prison that helped David Sweat and Richard Matt escape. In return, Richard Matt made paintings for him that he hung in his home, among other things. Exhibit A are paintings of Officer Palmer and his dogs recovered from Palmer's home after the escape.

## PRELIMINARY STATEMENT

10.  This is a civil rights action in which plaintiff seeks relief for the violation of his rights by correction officers and other employees and/or contractors in their personal capacities under the First, Eighth and Fourteenth Amendments of the United States

Constitution secured by 42 U.S.C. §1983.

11. The claim arises from a series of incidents in which defendant correction officials engaged in a pattern of harassment, abuse, intimidation, and assault, causing plaintiff to suffer injury while in the custody of the New York State Department of Correction and Community Supervision ("DOCCS") at Clinton and Great Meadow Correctional Facilities.

12. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

13. This action is brought pursuant to 28 USC §1331 and 42 USC §§1983 and 1988.

14. Venue is laid within the United States District Court for the Northern District of New York in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Northern District of New York.

## PARTIES

15. Plaintiff Luis Zenon was a prisoner in the custody of the DOCCS at Clinton and Great Meadow Correctional Facilities at all relevant times herein.

16. Defendant Correction Officer Patrick D. Downey was at all times relevant herein a correction officer in the employ of DOCCS at Clinton C.F. Defendant Downey acted under color of law and in his capacity as an employee/agent of the State of New York. He is sued in his individual capacity

17. Defendant Acting Commissioner Anthony Annucci was at all time relevant herein the Acting Commissioner of DOCCS and was a policymaker, decisionmaker and

4

supervisor for all DOCCS employees.  Defendant Annucci acted under color of law and in his capacity as an employee/agent of the State of New York.  He is sued in his individual capacity.

18.   Defendant Joseph Bellnier was at all time relevant herein the Deputy Commissioner for Correctional Facility Operations and was a policymaker, decisionmaker and supervisor for all DOCCS employees.  The safe and orderly operations of New York's correctional facilities are his responsibility.  Defendant Bellnier acted under color of law and in his capacity as an employee/agent of the State of New York.  He is sued in his individual capacity.

19.   Defendant Superintendents Racette, and Miller were at all times relevant herein Superintendents of Clinton and Great Meadow Correctional Facilities, respectively.  As such, they were policy makers, decisionmakers and supervisors for their respective DOCCS facility.   The Defendant Superintendents acted under color of law and in their capacities as employees/agents of the State of New York.  They are sued in their individual capacities.

20.    Defendants Donald Quinn and Matthew Thoms were at all times relevant herein First Deputy Superintendents of Clinton and Great Meadow Correctional Facilities, respectively.  As such, they were policy makers, decisionmakers and supervisors for their respective DOCCS facility.   The Defendant First Deputy Superintendents acted under color of law and in their capacities as employees/agents of the State of New York.  They are sued in their individual capacities.

21.   Defendants Stephen Brown and Rodney Eastman were at all times relevant herein Deputy Superintendents for Security of Clinton and Great Meadow Correctional

Facilities, respectively.  As such, they were policy makers, decisionmakers and supervisors for their respective DOCCS facility.    The Defendant Superintendents acted under color of law and in their capacities as employees/agents of the State of New York. They are sued in their individual capacities.

22.  Defendant Francis Scarlotta was at all times relevant herein a sergeant responsible for supervision of the Great Meadow C.F. Segregated Housing Unit ("SHU"). Defendant Scarlotta acted under color of law and in his capacity as an employee/agent of the State of New York.  He is sued in his individual capacity.

23.  Defendant John Doe in Charge of SHU at Great Meadow C.F. was at all times here relevant a Supervisor at Great Meadow C.F.  As such, he was a policy maker for and had supervision over the SHU.  This Defendant acted under color of law and in his capacity as an employee/agent of the State of New York.  He is sued in his individual capacity.

24.   Defendant John Doe Decisionmaker to place Clinton inmates in Great Meadow SHU was at all times here relevant a Supervisor and policy maker for DOCCS. Defendant John Doe Decisionmaker acted under color of law and in his capacity as an employee/agent of the State of New York.  He is sued in his individual capacity.

25.   Defendant John Doe Supervisors at Clinton and Great Meadow Correctional Facilities were at all times here relevant supervisors at said facilities.  As such, they had supervisory and/or policy making responsibility at their respective facilities.  These defendants acted under color of law and in their capacities as employees/agents of the State of New York.  They are sued in their individual capacities.

26.  Defendant John Doe State Troopers were at all times here relevant responsible for

investigating and assuming law enforcement responsibilities at correctional facilities after the escape. Said defendants witnessed injuries on Plaintiff but failed to take action. These defendants acted under color of law and in their capacities as employees/agents of the State of New York.  They are sued in their individual capacities.

27.    Defendant John Doe Correction Officers were at all times here relevant correction officers working in Clinton and Great Meadow Correctional Facilities, respectively.  These defendants acted under color of law and in their capacities as employees/agents of the State of New York.  They are sued in their individual capacities.

## FACTUAL ALLEGATIONS

### THE DAY OF THE ESCAPE

28.  On June 5, 2015, Luis Zenon was an inmate in the custody of DOCCS.  He was incarcerated at the Clinton C.F. and housed in the "Honor Block".  The Honor Block was a portion of the facilities' A block. He was also a porter who performed numerous jobs around the block.  He had been on the Honor Block for seven years.

29.  Zenon knew the escapees Richard Matt and David Sweat well.  All three had lived on the Honor Block for a long time.  Zenon's cell was near Matt and Sweat's cell.

30.  During the morning, he had heard from another inmate that inmates had escaped. He heard on television a little later that the inmates who escaped were Matt and Sweat.

31.  At some point later that day, Mr. Zenon was cuffed and taken from his cell to the 4 Company bubble.  Numerous people were in the room.  Some were in suits, others in Crisis Intervention Unit jackets.  One, defendant Correction Officer Patrick Downey was in uniform.

32.  Mr. Zenon was aggressively question while seated in the room and handcuffed. In an apparent effort to extract information from him, the choked him on three occasions. Each time they would choke him until he changed color, then they would let him go.  Mr. Zenon could not breathe while he was being choked.

33.  Mr. Zenon was also slapped hard in the face in the course of questioning.

34.  Mr. Zenon feared for his life.

<u>LUIS ZENON IS TRANSPORTED TO GREAT MEADOW C.F.</u>

35.  He was locked in his cell until June 9, 2015 when officers came to his cell at about 11:00 PM and screamed "don't fucking move" at him.  They then took him out of his cell in his underwear to a room in Clinton. They screamed "don't talk and keep your head down".  Given what Mr. Zenon had suffered while being questioned on June 6, he was horrified and fearful for his life.

36.  He was given prison greens, shackled, and put in a van with two other inmates. He had no idea what was happening or where he was going, and officers were screaming at them to not say a word to one another.

37.  A few hours later, he arrived at Great Meadow Correctional Facility.  He suffered extreme fright during the entire trip there and was in great pain due to the handcuffs being very tight on him.

38.  After they arrived, he asked an officer to loosen his cuffs because his circulation was cut off.  Mr. Zenon passed out from the pain and stress.

39.  When he came to, he heard the officer call him a "pussy".  He did not loosen the cuffs.  He was put up against a wall and Zenon went down again.  He was told to get up but he could not, he was too weak.  The officer then kicked him in the face and took the

handcuffs off.

## LUIS ZENON IS PLACED IN HORRIFIC CONDITIONS IN GREAT MEADOW SHU

40.   He was escorted to a cell in Great Meadow by four officers.  While walking through a stairwell he was punched in the stomach numerous times.  He was then thrown into a cell in SHU.

41.   Another prisoner at Great Meadow saw Mr. Zenon and called his wife to tell her he was there.  Two days later his wife called the facility.  A sergeant came to him and said that if his family calls again, you're not going to like what happens, then elaborating, that he does not belong to "us", meaning Great Meadow C.F., he belongs to Clinton.

42.   He was locked in SHU at Great Meadow for 31 days.

43.   The SHU at Great Meadow C.F. is used to punish prisoners who egregiously violate prison rules.

44.   SHU is a restrictive form of incarceration where prisoners spend 23 hours a day alone in a small cell and receive fewer privileges other inmates routinely receive.

45.   However, Mr. Zenon did not even receive the meager

46.   When he arrived at Great Meadow, he was denied his personal belongings.  He had no change of clothes.

47.   He was not allowed the one hour out of his cell that all SHU inmates are entitled to by law.  Every few days he was allowed a shower.  The shower facility was filthy.

48.   He was not allowed to writing instruments, paper or phone calls.  He was not offered and could not obtain a grievance form.  He was given no opportunity to challenge his confinement.

49.   He was held under these inhumane and frightening conditions and wholly

incommunicado for 31 days.

50.  Zenon and many others were placed in SHU to cover up the crimes of correction

officers and make sure they were isolated from the outside world – including lawyers –

so the outside world could not hear their complaints and could not observe their injuries,

including doctors.

51.  Because of the first assault and each assault, each threat and each example of

inhumane treatment, plaintiff suffered extreme fear, fright, and horror.

52.  Mr. Zenon exhausted all administrative remedies available to him.

**THE INSPECTOR GENERAL REPORT**

53.  On June 6, 2016, the Inspector General produced a report, incorporated here by

reference, identifying gross incompetence, negligence and a dereliction of duty by guards

and supervisors.  Though the scope of the report was only to "determine all factors

potentially involved in the escape" and to make recommendations to prevent further

escapes, it also points out that crimes were committed by correction officials and that, in

the course of the investigation, correction officials lied under oath.

54.  Nevertheless, upon information and belief, only one correction official has been

prosecuted for any crime in connection with the escape or its aftermath, Correction

Officer Eugene Palmer, the one caught red-handed.  He smuggled in tools used for the

escape and gave them to Matt, gave Matt and Sweat advance warning about cell searches,

and performed other improper and illegal acts to facilitate the escape. He also destroyed

evidence after the escape.  Palmer even bragged to investigators that he had such a close

and trusting relationship with Richard Matt that Matt had vowed to "kill any inmate who

assaulted Palmer."  For these crimes and this conduct, he worked out a deal with the

local District Attorney for a six month sentence.  He served four months in a local jail and was released.

55.   Upon information and belief no criminal charges have been brought by the Clinton County District Attorney's Office for the criminal brutality and torture perpetrated by correction officers in an attempt to cover up officer culpability in the escape.  Reports of an FBI investigation of narcotics trafficking by correction officers at Clinton have also, upon information and belief, led to no criminal charges.

56.   Defendant Governor Cuomo's unjustified, overly broad public support of Clinton correction officers assured them that the torture, physical abuse and harassment they inflicted on inmates in the aftermath of the escape would go unpunished.

57.   The Governor's words encouraged and emboldened the chain of command below him to engage in brutality and misconduct, and was a contributing cause of the injury to the plaintiff and numerous other inmates.

## DAMAGES

58.   As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

  a.   Violation of his right to Due Process of Law under the Fourteenth Amendment to the United States Constitution;

  b.   Violation of his right under the Eighth Amendment to be free from cruel and unusual punishment;

  c.   Violation of his right under the First Amendment to freedom of speech, including retaliation for exercising free speech;

  d.   Deprivation of liberty;

e.   Deprivation of property;

f.   Physical pain and suffering; and

g.   Emotional trauma and suffering, including fear, emotional distress, frustration, fright, horror, grief, depression, loss of sleep, and increased levels of anxiety.

### FIRST CAUSE OF ACTION – ASSAULT ON JUNE 6, 2015
(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United States to be free from Cruel and Unusual Punishment)

59.   The above paragraphs are here incorporated by reference.

60.   Defendant Correction Officer Patrick Downey and John Doe Correction Officers and Supervisors acted under color of law and deprived and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from cruel and unusual punishment under the Eighth Amendment when they assaulted and terrorized him.

61.   Each participated in or was in a position to prevent the assault from taking place but did not interceded in the obviously unconstitutional acts of the others.

62.   These defendants acted with malicious intent, purposefulness and/or deliberate indifferent and are liable to plaintiff under 42 U.S.C. §1983.

62.   Plaintiff was physically and emotionally injured and has been damaged by defendants' wrongful acts.

### SECOND CAUSE OF ACTION – ASSAULTS IN TRANSPORT TO GREAT MEADOW C.F.
(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United States to be free from Cruel and Unusual Punishment)

63.   The above paragraphs are here incorporated by reference.

64.   Plaintiff was assaulted when defendant John Doe Correction Officers applied his handcuffs too tight, cutting off his circulation, and other defendant John Doe Correction

Officers kicked him in the face and punched him when he first arrived at Great Meadow C.F.

65.   Defendants John Doe Clinton Correction Officers acted under color of law and deprived and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from cruel and unusual punishment under the Eighth Amendment when they assaulted and terrorized him.

66.   Defendant John Doe Correction Officers acted with malicious intent, purposefulness and/or deliberate indifference and are liable to plaintiff under 42 U.S.C. §1983.

67. Each defendant either participated in the unconstitutional conduct or failed to intercede in the obviously unconstitutional conduct by fellow officials

68.   Plaintiff was physically and emotionally injured and has been damaged by defendants' wrongful acts.

### THIRD CAUSE OF ACTION – SUBJECTION TO PRISON CONDITIONS "REPUGNANT TO THE CONSCIENCE OF MANKIND" BY GREAT MEADOW C.F. PRISON OFFICIALS

(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United States to be free from Cruel and Unusual Punishment and/or his Fourteenth Amendment Right to be Free from Violations of (Substantive) Due Process of Law)

69.   The above paragraphs are here incorporated by reference.

70.   Defendant Superintendent Christopher Miller, First Deputy Superintendent Matthew Thoms, Deputy Superintendent for Security Rodney Eastman, Defendant Sergeant Francis Scarlotta, John Doe Great Meadow C.F. Official in Charge of SHU and John Doe Correction Supervisors and Officers acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory right to be free from cruel and

13

unusual punishment under the Eighth Amendment and/or due process of law under the Fourteenth Amendment when they subjected Plaintiff to prison conditions in the SHU that are repugnant to the conscience of mankind.

71. Each defendant either participated in the unconstitutional conduct or failed to intercede in the obviously unconstitutional conduct by fellow officials

72.  These defendants acted with malicious intent, purposefulness and/or deliberate indifference and are liable to plaintiff under 42 U.S.C. §1983.

73.  Plaintiff was physically and emotionally injured and has been damaged by defendants' wrongful acts.

### FOURTH CAUSE OF ACTION – PLACEMENT IN PUNITIVE CONDITIONS WITHOUT DUE PROCESS OF LAW BY GREAT MEADOW C.F. PRISON OFFICIALS

(Violation of Plaintiff's Fourteenth Amendment Right under the Constitution of the United States to be free from Deprivation of Liberty Without (Procedural) Due Process of Law)

74.  The above paragraphs are here incorporated by reference.

75.  Defendants Superintendent Christopher Miller, First Deputy Superintendent Matthew Thoms, Deputy Superintendent for Security Rodney Eastman, Defendant Sergeant Francis Scarlotta, John Doe Great Meadow C.F. Official in Charge of SHU, John Doe Correction Supervisors and Officers and John Doe Decisionmaker to Transport Clinton Inmates to Great Meadow C.F. SHU acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory right to be free from a deprivation of liberty without due process of law under the Fourteenth Amendment when, without offering any hearing or resort to legal processes, they caused plaintiff to be confined to the SHU in conditions below conditions incident to general prison life and to even below the normal conditions of the already low standard of ordinary SHU life.

76.   Each defendant either participated in the unconstitutional conduct or failed to intercede in the obviously unconstitutional conduct by fellow officials.

77.   These Defendants acted with malicious intent, purposefulness and/or deliberate indifference and are liable to plaintiff under 42 U.S.C. §1983.

78.   Plaintiff was physically and emotionally injured and has been damaged by defendants' wrongful acts.

### **FIFTH CAUSE OF ACTION -- SUPERVISORY LIABILITY**
(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United States to be free from Cruel and Unusual Punishment)

79.   Defendants Acting Commissioner Anthony Annucci, Deputy Commissioner in charge of Facility Operations Joseph Bellnier, Clinton C.F. Superintendent Racette, First Deputy Superintendent Donald Quinn, Deputy Superintendent for Security Stephen Brown, and Supervisors of Clinton (collectively, the "Clinton Supervisors") were aware of the particular dangers faced by Clinton Honor Block inmates such as plaintiff while they remained at Clinton C.F.  They knew about the escape and knew of plaintiff's proximity to the escape.  They knew about the massive media coverage of the escape and the deep embarrassment of correction officials who allowed the escape to happen. For a time, plaintiff and the other block inmates were the highest profile inmates in the system and were suspected of having information about a dangerous and high profile escape of prisoners. Yet, through deliberate indifference with malicious intent or gross negligence, they ignored the dangers and thereby tacitly facilitated and condoned the unconstitutional actions taken by their subordinates. If they were somehow ignorant of these inmates and the pressures and dangers they faced, which would strain all credulity, then they were willfully ignorant and grossly negligent.

15

80.   Plaintiff made numerous complaints to various prison authorities and to other officials explaining that his safety and security were in serious jeopardy because of threats and harassment by correction officers in connection with the investigations of the escape.  The Clinton Supervisors were aware or consciously remained willfully ignorant of Plaintiff's realistic, plausible and highly foreseeable concerns, but again, failed to take any corrective action.

81.   Dozens of inmates who were in the honor block or who worked in the tailor shop were brutally interrogated, beaten, and tortured by prison guards in an attempt at retribution and cover up.[3]  The Clinton Supervisors should have known and extremely likely did know of such activities.  If they did not know it could only be attributed to willful ignorance. Despite the obvious nature of what was happening, the Clinton Supervisors took no corrective action, despite obvious actions that could be taken such as monitoring by themselves and their top deputies around the clock, and requests that the Inspector General and outside agencies investigate.

82.   Furthermore, brutal, unconstitutional correction practices had taken place for years at Clinton C.F. and other maximum security prisons as documented by the New York State Correctional Association.  It was likely that under the extraordinary circumstances of the escape, the media attention, the embarrassment to correction officers, and the implicit public encouragement by Governor Cuomo himself, that such brutality would occur or was occurring against inmates, especially those with knowledge

---

[3] http://www.nytimes.com/2015/08/12/nyregion/after-2-killers-fled-new-york-prisoners-say-beatings-were-next.html.  *See also* Matthews et al.  v. Cuomo et al. 16cv4210 (N.D.N.Y.); Martinaj et al. v. Uhler et al., 18cv257 (N.D.N.Y.), Alexander v. Cuomo et al. 17cv309 (N.D.N.Y.); Burks v. Stickney 16 cv 759 (N.D.N.Y.)

of the persons and relations between the escapees, prison workers, and correction officers. Nevertheless, no corrective actions were taken.

83. Corrective action by the Clinton Supervisors would have prevented the assault that took place against plaintiff.

84. The Clinton Supervisors knew that certain inmates like plaintiff who were either housed in the Honor Block and who worked in Tailor Shop 1 were particularly vulnerable under the circumstances of the escape aftermath. They knew by complaints, letters and grievances that they was targeted. Nevertheless, they failed to take any corrective action.

85. The above described failure to supervise demonstrated deliberate indifference and/or gross negligence towards the inmates, including plaintiff, who suffered constitutional violations at the hands of correctional officer subordinate to the Clinton Supervisors. The Clinton Supervisors were therefore the cause of the violation of plaintiff's rights.

86. The Clinton Supervisors have damaged plaintiff by their failure to properly supervise, discipline, review, remove or correct the illegal and improper acts of their subordinate officers.

87. Plaintiff has been damaged as a result of the wrongful, grossly negligent and illegal acts of the supervisory defendants and are liable to liable to plaintiff under 42 U.S.C. §1983.

## SIXTH CAUSE OF ACTION -- SUPERVISORY LIABILITY
(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United

States to be free from Cruel and Unusual Punishment)

106.     Defendants Acting Commissioner Anthony Annucci, Deputy Commissioner in charge of Facility Operations Joseph Bellnier, Great Meadow Superintendent Christopher Mitchell, First Deputy Superintendent Matthew Thoms, Deputy Superintendent for Security Rodney Eastman, Sergeant Scarlotta, and John Doe Supervisors of Great Meadow (collectively, the "Great Meadow Supervisors") were aware of the particular dangers faced by Clinton Honor Block inmates such as plaintiff when they arrived at Great Meadow SHU.  They knew about the escape and knew of plaintiff's proximity to the escape.  They knew about the massive media coverage of the escape and the deep embarrassment of correction officials who allowed the escape to happen. For a time, plaintiff and the other block inmates were the highest profile inmates in the system and were suspected of having information about a dangerous and high profile escape of prisoners. Yet, through deliberate indifference with malicious intent or gross negligence, they ignored the repugnant conditions plaintiff and others lived in inside Great Meadow SHU, thereby tacitly facilitated and condoned the unconstitutional actions taken by their subordinates. If they were somehow ignorant of these inmates and the pressures and dangers they faced, which would strain all credulity, then they were willfully ignorant and grossly negligent.

107.     Plaintiff made complaints to various prison authorities and to other officials in connection with the living conditions at the SHU.  The Great Meadow Supervisors were aware or consciously remained willfully ignorant of Plaintiff's realistic, plausible and highly foreseeable concerns, but again, failed to take any corrective action.

108.    Dozens of inmates who were in the honor block or who worked in the tailor shop were held in such repugnant conditions.[4]  The Great Meadow Supervisors should have known and extremely likely did know of such activities.  If they did not know it could only be attributed to willful ignorance. Despite the obvious nature of what was happening, the Great Meadow Supervisors took no corrective action, despite obvious actions that could be taken such as making sure that plaintiff and the other inmates from Clinton were provided implements and belongings they were legally entitled to and that the conditions met constitutional standards.  They determined not to.

109.    Such a decision to deny them these basic standards likely came down from Annucci and Bellnier.

110.    Furthermore, brutal, unconstitutional correction practices had taken place for years at Clinton C.F. and other maximum security prisons as documented by the New York State Correctional Association.  It was likely that under the extraordinary circumstances of the escape, the media attention, the embarrassment to correction officers, and the implicit public encouragement by Governor Cuomo himself, that such brutality would occur or was occurring against inmates, especially those with knowledge of the persons and relations between the escapees, prison workers, and correction officers.  Nevertheless, no corrective actions were taken.

111.    Corrective action by the Great Meadow Supervisors would have prevented the unconstitutional living conditions that plaintiff and others were forced to endure at Great Meadow SHU.

---

[4] http://www.nytimes.com/2015/08/12/nyregion/after-2-killers-fled-new-york-prisoners-say-beatings-were-next.html.  *See also* Matthews et al.  v. Cuomo et al. 16cv4210 (N.D.N.Y.); Martinaj et al. v. Uhler et al., 18cv257 (N.D.N.Y.), Alexander v. Cuomo et al. 17cv309 (N.D.N.Y.).

112.     The Great Meadow Supervisors knew that certain inmates like plaintiff who were either housed in the Honor Block and who worked in Tailor Shop 1 were particularly vulnerable under the circumstances of the escape aftermath.  They knew by complaints, letters and grievances that they was targeted.  Nevertheless, they failed to take any corrective action.

113.     The above described failure to supervise demonstrated deliberate indifference and/or gross negligence towards the inmates, including plaintiff, who suffered constitutional violations at the hands of correctional officer subordinate to the Great Meadow Supervisors.  The Great Meadow Supervisors were therefore the cause of the violation of plaintiff's rights.

114.     The Great Meadow Supervisors have damaged plaintiff by their failure to properly supervise, discipline, review, remove or correct the illegal and improper acts of their subordinate officers.

115.     Plaintiff has been damaged as a result of the wrongful, grossly negligent and illegal acts of the supervisory defendants and are liable to liable to plaintiff under 42 U.S.C. §1983.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.     In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.     Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.      Awarding plaintiff reasonable attorneys' fees, costs and disbursements of

this action; and

D.      Granting such other and further relief as this Court deems just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:      April 13, 2018
            Brooklyn, New York                Respectfully yours,

                                                     /s/
TO:   ALL NAMED DEFENDANTS              By: Leo Glickman
                                        Stoll, Glickman & Bellina, LLP
                                        Attorneys for Plaintiff
                                        5030 Broadway, Ste. 652
                                        New York, NY 10034
                                        (718) 852-3710
                                        (718) 852-3586
                                        lglickman@stollglickman.com